IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ADRIENNE COLWELL,** | **CASE NO 5:12CV666** |
| Plaintiff, | |
| v. | **MAGISTRATE JUDGE GREG WHITE** |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security, | |
| Defendant. | **MEMORANDUM OPINION & ORDER** |

Plaintiff Adrienne Colwell ("Colwell") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Colwell's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. Procedural History

On March 13, 2009, Colwell filed an application for DIB and POD alleging a disability onset date of February 19, 2009, and claiming that she was disabled due to fibromyalgia and affective disorders. (Tr. 64 & 65.) Her application was denied both initially and upon reconsideration. Colwell timely requested an administrative hearing.

On November 29, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Colwell, represented by counsel, and an impartial vocational expert ("VE"), testified. On December 14, 2010, the ALJ found Colwell was able to perform past relevant work and, therefore, was not disabled. The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age 57 on the date of the ALJ's decision, Colwell is a "person of advanced age" under social security regulations. *See* 20 C.F.R. § 404.1563(e). Colwell has a high school education (Tr. 7-8) and past relevant work as a supervisor of computer operators, a checker, and a data entry clerk. (Tr. 16.)

*Hearing Testimony*

At the hearing, Colwell testified to the following:

- From 1985 to 1995, she worked as a teller at a bank (Tr. 33-34.)

- In January, 1996, she began working at a different bank as a data entry clerk. (Tr. 31.) After four months, she was promoted to quality check clerk. (Tr. 31-32.) Two years later she was promoted to floor supervisor, in charge of fourteen employees. (Tr. 32, 34-35.) At this position, she spent about two hours at a computer, while the rest of the time she was on her feet. (Tr. 32-33.)

- On a normal day, she has difficulty walking because of pain located between her lower back and legs. (Tr. 42.) She can stand about 20 minutes before she has to sit down due to leg weakness and lower back pain. *Id*. She cannot sit for an hour before she has to stand. (Tr. 44.) She has difficulty bending, stooping, and squatting. (Tr. 42.)

- She is not able to lift a gallon of milk (about ten pounds). (Tr. 44.)

- She has a couple of "good" days a month, when she may be able perform at a higher functional level. (Tr. 42.)

- She starts to prepare the meals, but her husband finishes with the cooking and cleaning. (Tr. 47.) He also does most of the household chores, including the laundry, although she does the folding. *Id*. They shop together so that he can pick up the items and load them into the car. *Id*.

- On a typical day, she fixes breakfast for her husband, but then is tired and lays down until about 11:30. (Tr. 48.) If it is a good day, she does some chores. *Id*. In the afternoon, she and her husband go to the grocery store, if necessary. *Id*. After dinner, she relaxes at home. *Id.*

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

2

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Colwell was insured on her alleged disability onset date, February 19, 2009 and remained insured through December 31, 2009. (Tr. 10.) Therefore, in order to be entitled to POD and DIB, Colwell must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Colwell established medically determinable, severe impairments, due to fibromyalgia and obesity; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Colwell was found capable of performing her past work activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ concluded that Colwell could perform her past work as a supervisor of computer operators.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. § 404.1520(d) (2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

3

record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an

4

accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Colwell contends that the ALJ improperly weighed the opinion of Mark Pellegrino, M.D., who found she was precluded from full-time work based upon her fibromyalgia. (Doc. No. 14 at 7-8.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

---

[2] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

The ALJ addressed Dr. Pellegrino's opinion, giving it little weight, as follows:

In March 2009, Ms. Colwell underwent evaluation of her fibromyalgia with Mark J. Pellegrino, M.D., a physical medicine and rehabilitation physician (Ex 1F). Dr. Pellegrino opined after one examination that Ms. Colwell would be unable to lift more than 10 pounds occasionally, or walk more than one block without sitting to rest (Ex 1F:8). Dr. Pellegrino further opined that Ms. Colwell would be able to sit for up to one hour before alternating her position, and that she would need to lie down frequently (Ex 1F:9). The doctor concluded that Ms. Colwell is "totally disabled, even for sedentary type work" (Ex 1F:9).

I grant little weight to Dr. Pellegrino's opinion. The record indicates that he examined Ms. Colwell only one time and, thus, cannot be said to have a treating history with her. I also note that that [sic] the doctor's extreme opinion sharply

---

source is familiar with other information in the case record relevant to the decision.

6

>contrasts the conservative treatment that Ms. Colwell received. Ms. Colwell was not referred to a pain management specialist nor was she prescribed any narcotic pain medication to aide in controlling her pain. Ms. Colwell's only treatment was through her primary care physician, which even presently remains conservative. I would anticipate further attempts for treatment by Ms. Colwell or her physician if her symptoms were as severe and disabling as indicated by Dr. Pellegrino's opinion. Lastly, although Dr. Pellegrino stated that Ms. Colwell is 'disabled,' it is not clear that he was familiar with the definition of 'disability' contained in the Social Security Act and Regulations. Furthermore, such a determination is solely left to the Commissioner.

(Tr. 15-16.)

Colwell asserts that even though Dr. Pellegrino only examined her one time, under SSR 12-2p his opinion should have been given greater weight as he is an expert in fibromyalgia. (Doc. No. 14 at 8.)

Fibromyalgia is a "[r]heumatic syndrome of pain in connective tissues and muscles without muscle weakness, characterized by general body aches, multiple tender areas, fatigue, sleep disturbances, and reduced exercise tolerance; seen most frequently among women 20 to 50 years of age; cause unknown." *Martinez v. Astrue*, 2012 WL 6093509, at *4 (C.D. Cal. Dec. 7, 2012) *quoting Ida G. Dox, et al.*, Attorney's Illustrated Medical Dictionary 55 (2004). Diagnosis is made based upon widespread pain for at least three months and pain on digital palpation present in at least 11 of 18 specific sites on the body. SSR 12-2p, 2012,[3] WL 3104869, at *2-3 (listing diagnostic criteria for fibromyalgia.) Both the diagnosis of an impairment as well as the accompanying physical limitations are necessary for Colwell to be considered disabled.

Objective medical evidence is needed, especially longitudinal records that reflect ongoing medical evaluation and treatment. *Id*. at *3. Colwell asserts that SSR12–2p requires remand for the ALJ to reconsider her fibromyalgia. But SSR 12–2p does not do away with the requirement that, once the ALJ finds that the claimant has fibromyalgia, he must determine whether that fibromyalgia, alone or in combination with other impairments, was disabling. Rather, SSR 12–2p

---

[3]The Court notes that the Social Security Administration has issued a ruling, effective July 25, 2012, that will assist in the evaluation of fibromyalgia. S.S.R. 12-2p. Although not in effect when the ALJ issued his opinion, and therefore, not specifically applicable to Colwell's case, the Ruling does assist in the analysis of fibromyalgia claims as it describes the clinical techniques used for the diagnosis of fibromyalgia.

7

states:

> Once [a medically determinable impairment] is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

SSR 12–2p, 2012 WL 3104869, at *5 (Jul. 25, 2012).

Dr. Pellegrino's opinion was inconsistent with the record evidence and it was not supported by his own objective physical examination findings. He found Colwell had pain in 14 of 18 tender points. (Tr. 191.) He opined that Colwell could walk for only one block, but that was after finding that her gait and balance were normal. (Tr. 188-191.) Also, Dr. Pellegrino imposed extreme limitations on Colwell's lifting ability after finding normal range of motion in her upper extremities and normal grip strength. More importantly, the longitudinal record since 1996 from Colwell's treating physician, Susan Hake, M.D., indicated that Colwell intermittently complained of joint pain and fatigue. (Tr. 213.) At an appointment in February, 2009, Colwell's primary complaint was fatigue. *Id*. In addition, Dr. Hake did not provide an opinion regarding the limiting effects of Colwell's fibromyalgia.

Colwell asserts that the opinion of her treating physician, Susan Hake, M.D., is consistent with Dr. Pellegrino's assessment. (Doc. No. 14 at 8-9.) Specifically, Colwell relies on Dr. Hake's opinion dated May 19, 2009. This opinion, however, described Colwell's mental restrictions, not any physical limitations. The nearest Dr. Hake came to a physical assessment was when she found that Colwell was limited in daily activities, *i.e*., unable to keep up with the house cleaning, unable to make plans with friends because she does not know how she will feel from day to day, unable to keep up with the laundry, and, needs help preparing/cleaning up with meals. (Tr. 208.)

The record further reflects that, although Colwell experienced pain and fatigue, her symptoms were controlled with medication, she did not require intensive treatment or hospitalization, she did not participate in a physical therapy program, and she was able to engage

8

in regular activities of daily living. The Second Circuit has explained that "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983); *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("The mere fact that working may cause pain or discomfort does not mandate a finding of disability."). The record here supports the ALJ's decision to afford Dr. Pellegrino's opinion little weight.

### Residual Functional Capacity

A claimant's RFC is the most that she can still do despite her functional limitations. 20 CFR § 404.1545(a); SSR 96-8p. The assessment must be based upon all of the relevant evidence, including the medical records and medical source opinions. 20 CFR § 404.1546(c). The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 CFR § 404.1527(e)(2). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)). Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide a basis for overturning the Commissioner's RFC determination. *Carter*, 2012 WL 1028105.

The Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected and the RFC was determined based upon objective medical and non-medical evidence. *See, e.g., Ford v. Comm'r of Soc. Sec.*, 114 F.App'x 194 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.,* 342 Fed. App'x 149, 157 (6th Cir. 2009). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 at 157.

The ALJ formulated Colwell's RFC as follows:

After careful consideration of the entire record, I find that, through the date last insured, Ms. Colwell had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with certain restrictions. Specifically, Ms. Colwell

> is able to occasionally climb ramps and stairs, as well as occasionally balance and stoop. She is precluded, however, from climbing ladders, ropes, and scaffolds. Ms. Colwell must also avoid all exposure to dangerous machinery and unprotected heights. Lastly, she is unable to meet fast-paced, high production standards.

(Tr. 14.) The RFC was based upon Colwell's own statements as well as Dr. Hake's examination notes. The ALJ noted that by May 2008, Colwell began to complain of some muscle weakness in addition to fatigue, difficulty sleeping, and muscle and joint pains. (Tr. 15, *citing* Tr. 293.) Dr. Hake's February, 2009 notes indicated "5/5 grip" strength while also noting diminished endurance and a slowed gait. *Id. citing* Tr. 290-291. Dr. Hake continued Colwell on the prescribed medical regimen. *Id.* About a year later, in May, 2009, Colwell saw Dr. Hake for the purpose of completing disability forms. (Tr. 16.) The ALJ further recognized that in April, 2010, after sustaining a fall, Colwell visited Dr. Hake, and it was recorded that the fibromyalgia had worsened. *Id*. The ALJ noted, however, that because December 31, 2009 was Colwell's date last insured, his analysis must stop on that date. The ALJ explained:

> In sum, the above residual functional capacity assessment is supported by the overall record. While I have no doubt Ms. Colwell experiences pain associated with her impairments, I do not find it is so severe as to preclude all basic work activity. The residual functional capacity takes into consideration Ms. Colwell's pain and fatigue. Furthermore, although I find her mental impairments to be non-severe, this combined with the fibromylagia further limited her ability to work in a fast-paced, high production environment.
>
> Furthermore, Ms. Colwell's daily activities are consistent with the residual functional capacity as well. Prior to her date last insured, Ms. Colwell cooked for her family and performed light household chores. Her husband would however help her with the heavier tasks such as vacuuming and carrying laundry baskets and grocery bags. She enjoyed shopping in Amish Country with her daughter and attending church two to three times a week (Ex 7F). These activities do not support a more restrictive residual functional capacity.

(Tr. 16.) The ALJ's RFC accounted for Colwell's physical and mental limitations that were supported by the record. The ALJ limited Colwell to a reduced range of light work with postural, environmental, and mental restrictions. Specifically, he noted that the RFC takes into consideration Colwell's pain and fatigue. (Tr. 16.) He also considered that her non-severe mental impairments, combined with her fibromyalgia, limited her ability to work in a fast-paced, high production environment. *Id*.

Colwell also contends that the ALJ ignored her complaints of fatigue and pain. (Doc. No.

10

14 at 9-10.)  The Commissioner asserts that the ALJ properly considered Colwell's credibility. (Doc. No. 16 at 14-15.)

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so").

The ALJ addressed Colwell's pain complaints when he noted that "Colwell has consistently stated that she is extremely fatigued and feels weak . . . and [s]he experiences pain all over her body and describes it as a toothache all over." (Tr. 15.)  The ALJ considered these complaints, along with Colwell's daily activities performed prior to her date last insured, finding that a more restrictive RFC was not necessary. (Tr. 16.)

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

s/ Greg White<br>
United States Magistrate Judge

Date:    February 25, 2013